In re ASHLAND et al.

(Third Division.   Seward.   February 19, 1912.)

1. INTOXICATING LIQUORS (§ 58*)—LICENSE.

Where two persons jointly petition for the issuance of a liquor license to them, and one is found to be disqualified, the license will be denied.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 58, 71, 72; Dec. Dig. § 58.*]

2. INTOXICATING LIQUORS (§ 69)—LICENSE.

The doctrine is now well settled that the court or board charged with the duty of issuing a liquor license is vested with a sound judicial discretion, to be exercised in view of all the facts and circumstances of each particular case, as to granting or refusing the license applied for.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 70, 73; Dec. Dig. § 69.*]

3. CONSTITUTIONAL LAW (§ 197*)—EX POST FACTO LAWS—INTOXICATING LIQUOR—LICENSE.

One Ashland was found guilty in 1908 of violating the then law governing the sale of intoxicating liquor in Alaska.   In 1909 Congress passed an amendatory act, which repeated a clause from the former law "that such applicant has not been, since the passage of this act, adjudged guilty of violating the laws governing the sale of intoxicating liquors" (Act Feb. 6, 1909, c. 80, 35 Stat. 600).   In 1909, after the passage of the amendatory act of 1909, Ashland applied for a license and was denied because of his conviction under the act of 1908.   Held, there was no such interest of the applicant in the liquor trade as to prevent Congress, in the exercise of its police power, disqualifying him from engaging in the business of selling intoxicating liquor, on account of his conviction prior to the passage of the act of 1909.   Such a law would not be ex post facto, and, if it were, there is nothing in the Constitution of the United States forbidding it.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 550; Dec. Dig. § 197.*]

The petitioners, Robert Ashland and Andrew Beck, have made application to the court under section 465, pt. 2, Carter's Codes of Alaska, as amended, for a license to sell intoxicating liquor at retail in the town of Chitina.   The application

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

complies with the requirements of that section, save in one respect. The act provides that the petition shall contain:

"First, the name and residence of the applicant and how long he has resided there."

The petition now before the court, while setting up the residence of the applicants at Chitina, does not disclose their length of residence at that place. The petition purports to be signed and sworn to by both applicants. It recites:

"I have not since March 3, 1899, been adjudged guilty of violating the laws governing the sale of intoxicating liquors or the laws for the prevention of crime in said district and territory."

To the granting of the license prayed, the district attorney has filed a protest, which is as follows:

"(1) That Andrew Beck, one of the applicants named in said application, was on April 27, 1911, duly convicted in the justice's court for the Cordova precinct, Third division, district of Alaska, of a violation of the laws for the prevention of crime in the district of Alaska, to wit, of the crime of maintaining a bawdyhouse, in violation of section 127, Penal Code of Alaska, in a criminal action entitled United States of America v. Edward Kelter and Andrew Beck, from which judgment an appeal was taken by defendants to the district court for the district of Alaska, Third division, and judgment rendered against said defendants in said district court, in said cause, on the 27th day of April, 1911.

"(2) That the applicant, Robert Ashland, was on the 28th day of December, 1908, in the district court for the district of Alaska, Third division, duly convicted upon the charge of contempt of court for violating an order of said court promulgated on the 20th day of April, 1908, concerning the management of the liquor business in said division, in this: That he (the said Robert Ashland), in disobedience of said order, did allow a woman of ill repute to be and remain in the saloon of said Ashland at Cordova in said district and to drink intoxicating liquors therein."

The truth of the recitals of the protest is conceded by petitioners, but they contend they are entitled to a license notwithstanding.

E. E. Ritchie, of Valdez, for petitioners.
George R. Walker, of Valdez, for the United States.

CUSHMAN, District Judge. The license is asked to run to both applicants. It would probably be sufficient to determine if either of them was disqualified and, if so, deny the

license. This course would probably result in a renewal of the application on behalf of the other, for which reason the qualifications of both will be considered.

The act of March 3, 1899 (section 465, pt. 2, Carter's Codes), provided:

"That every person applying for a license to sell intoxicating liquors in said district shall file with the clerk of the court a petition for such license, and such petition shall be considered and acted upon by the court in the order in which the same was filed and numbered. Said petition shall contain: * * * Third. The statement * * * that such applicant has not been, since the passage of this act, adjudged guilty of violating the laws governing the sale of intoxicating liquors or laws for the prevention of crime in said district."

Section 473 provides:

"That any person, having obtained a license under this act, who shall violate any of its provisions, shall, upon conviction of such violation, be fined not less than fifty dollars nor more than two hundred dollars, and upon every subsequent conviction of such violation during the year for which such license is issued shall be fined a like amount, and in addition to such fine shall pay a sum equal to twenty-five per centum of the amount of the fine imposed for the offense immediately preceding, and have his license revoked, and in case of nonpayment of the fines and penalties above named shall be imprisoned for a period of time not exceeding six months, or till the same are paid. That after second conviction no license shall thereafter be granted to said party: Provided, that no minor under sixteen years of age shall be allowed to enter any place where liquors are sold other than retail, without the consent of the parent or guardian of such minor."

Section 478 provides:

"That no licensee under a barroom license shall employ, or permit to be employed, or allow any female or minor or person convicted of crime, to sell, give, furnish, or distribute any intoxicating drinks or any admixture thereof, ale, wine, or beer to any person or persons. And no licensee in any place shall knowingly sell or permit to be sold in this establishment any intoxicating liquor of any kind to any person under the age of twenty-one years, under the penalty, upon conviction thereof, of forfeiting such license, and no person so forfeiting his license shall again be granted a license for the term of two years."

On February 6, 1909, section 465 was amended by requiring in the applicant's petition to contain these additional recitals:

"Sixth. That said applicant will not conduct, maintain, or permit the maintenance of any gambling, dance hall, or bawdyhouse on or in connection with the premises, nor permit any female or minor in or about the rooms where liquor is sold or served. * * * That should it appear to the district judge that any of the statements above enumerated, required to be made in the petition, are untrue at the time of application for such license, such application shall be denied." Act Feb. 6, 1909, c. 80, 35 Stat. 602.

Petitioners contend that the only "law for the prevention of crime" in the district of Alaska is found in chapter 35, pt. 2, Carter's Codes. This chapter is entitled "Of the prevention of crimes and misdemeanors," and regulates the procedure for placing an accused party under bonds to keep the peace and be of good behavior. It is what in ordinary parlance would be called a "law" of the district and not "laws." There is no penal sanction to be incurred by breaking it. There is nothing to violate in the sense that that term is generally used. It is a matter of procedure and regulation that is provided and not substantive law. The act of Congress embodying the criminal laws of Alaska does not provide in express terms that they were enacted to prevent crime in that district. The act provided (Act March 3, 1899, c. 429, 30 Stat. 1253):

"Chapter 429.

"An act to define and punish crimes in the district of Alaska and to provide a code of criminal procedure for said district.

"Be it enacted: * * * That the penal and criminal laws of the United States of America and the procedure thereunder relating to the district of Alaska shall be as follows: * * *

"Sec. 2. That the crimes and offenses defined in this act, committed within the district of Alaska, shall be punished as herein provided."

Different reasons have been given by lawgivers and philosophers for the imposition of punishment for the violation of certain of a country's laws. Some have said that the criminal is imprisoned that he may repent and reform; some that he is imprisoned to punish him; some that it is to save the remainder of society, at least for a time, from further danger at his hands; some that punishment is inflicted in order to convince others that the risk of inconvenience and discomfort is so great

as to render the commission of crime too hazardous an employment and point the moral that after all "honesty is the best policy"—but all these reasons are only the means, the physical and mental instruments, the human desires, hopes, and fears that are to be played upon to prevent and lessen crime.

No reason is suggested why Congress should consider the violation of any of the provisions of the procedure prescribed in the chapter regulating the placing of persons under bonds to keep the peace controlling in the matter of liquor licenses.

It may be reasonably contended that the retail liquor business, as long as alcohol plays an important part in so many crimes, should be only intrusted to the law-abiding and not to those who have broken the laws in the past, and may therefore be presumed to be more likely to do so again, than those who have not.

Section 127, pt. 1, of Carter's Codes, provides that one convicted of keeping a bawdyhouse shall be imprisoned not less than three months nor more than one year, or be fined not less than $100 nor more than $500.

Section 2, pt. 2, Carter's Codes, defines a crime as follows:

"That a crime or public offense is an act or omission forbidden by law, and punishable, upon conviction, by either of the following punishments: * * * Second, imprisonment; third, fine. * * *"

It therefore follows that the petitioner, Andrew Beck, has been, since the passage of the act of 1909, adjudged guilty of violating one of the laws of the district for the prevention of crime, and that therefore, under the sixth subdivision of section 465, as amended, supra, his application must be denied.

Passing to the consideration of the fitness of the other applicant, Robert Ashland: There was no statute prior to the amendment of 1909 forbidding the presence of females about the rooms where liquor was sold or served, although section 478 provided that:

"No licensee * * * shall employ * * * or allow any female * * * to sell, give, furnish, or distribute any intoxicating drinks * * * to any person."

Petitioners' counsel contend that, as the conviction of Ashland of contempt of court was in 1908, he had not therefore been found guilty, "since the passage of this act," of violating the laws governing the sale of intoxicating liquors. This language "that such applicant has not been since the passage of this act adjudged guilty of violating the laws governing the sale of intoxicating liquors" was a part of the act passed in 1899. There was no such interest of the applicant in the liquor trade as to prevent Congress, in the exercise of its police power, disqualifying him from engaging in the business of selling intoxicating liquor, on account of his conviction prior to the passage of the act of 1909. Such a law would not be ex post facto, and, if it were, there is nothing in the Constitution of the United States forbidding it.

The injunction, for the violation of which the applicant Ashland was convicted of contempt, was one concerning his management of the liquor business. In this proceeding now before the court there is no such showing as to render that judgment of conviction subject to collateral attack. It must therefore be considered that such injunction was issued under the laws governing the sale of intoxicating liquors, and, when the applicant violated the injunction, he violated the law governing the sale of intoxicating liquor, for the laws and the discretion vested in the licensing power must be liberally construed to accomplish the object of the law. If the applicant's conviction were not within the letter of the statute law, yet—

"a few decisions hold that, if a person who desires a liquor license brings himself within the terms of the law by complying with all the statutory preliminaries and possessing the requisite moral and other qualifications, he is entitled, as a matter of law, to be licensed, and the license cannot be withheld from him, but in most jurisdictions, the doctrine is now well settled that the court or board charged with the duty of issuing the license is vested with a sound judicial discretion, to be exercised in view of all the facts and circumstances of each particular case, as to granting or refusing the license applied for." 9 Cyc. 135.

The applicant must be held to not only have violated a law governing the sale of intoxicating liquors, of which the courts would hold him to account, although he had no actual knowl-

edge, but, by the injunction and his conviction for its violation, he must be considered to. have knowingly and willfully violated such law.

Contempts of court are punishable by fine, or imprisonment, or both. Section 610, pt. 4, Carter's Codes. A contempt of court, therefore, is a crime as defined in section 2, pt. 2, Carter's Codes, supra.

Apart from the statutory definition of crime which must be held to have been the only thing contemplated by Congress in enacting the liquor law, the contempt disclosed by the record is held in general a criminal contempt, for the injunction was not issued in a private suit for the benefit of the opposite party but for the protection of the public. 9 Cyc. p. 6.

Therefore, under the mandatory provision of subdivision 6 of section 465, as amended, a license must be denied the applicant Ashland. It will be unnecessary to consider the effect of the failure of the application to set out the length of the residence of each of the applicants at Chitina.